## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CLOVERLEAF GOLF COURSE, INC.,          )
                                       )
      *Plaintiff*,                   )
                                       )
v.                                     )   Case No. 3:11-CV-00190-DRH-SCW
                                       )
FMC CORPORATION,                       )
                                       )   ***JURY TRIAL DEMANDED***
      *Defendant*.                   )

---

## COMPLAINT

Relator Cloverleaf Golf Course, Inc. ("Relator"), by and through the undersigned attorneys, for its Complaint against Defendant FMC Corporation, alleges as follows:

### NATURE OF THE CASE

1.      This is a qui tam action for false patent marking under 35 U.S.C. § 292.

2.      As set forth in detail below, Defendant has violated 35 U.S.C. § 292(a) by falsely marking articles with expired patents for the purpose of deceiving its competitors and the public into believing that such articles are covered by the falsely marked patents.

3.      Relator Cloverleaf Golf Course, Inc. is a corporation organized and existing under the laws of Illinois, is located at 3555 Fosterburg Road, Alton, Illinois 62002, in the Southern District of Illinois, and is lawfully engaged in the ownership and maintenance of a golf course.

4.      In its ownership and maintenance of a golf course, Relator has used at least one of Defendant's falsely marked products, Dismiss Turf.

1

5.     Upon information and belief, Defendant FMC Corporation is a corporation organized and existing under the laws of Delaware, having its principal place of business at 1735 Market Street, Philadelphia, Pennsylvania 19103.

6.     This Court has personal jurisdiction over FMC Corporation because, upon information and belief, FMC Corporation has sold and continues to sell falsely marked products (as described in greater detail below) in Illinois and in this District and/or in the stream of commerce with knowledge that they would be sold and used in Illinois and in this District.

7.     Further, this Court has personal jurisdiction over FMC Corporation, because upon information and belief, FMC Corporation transacts substantial business in Illinois, including manufacturing, marketing, selling, and supplying agricultural products, professional products, lithium products, and biopolymer products to golf facilities, commercial pest control services, farmers, cooperatives, local dealers, and other consumers located throughout Illinois, including the Southern District of Illinois.

8.     FMC Corporation, sells and advertises, and continues to sell and advertise falsely marked products to the residents of Illinois through at least the following Web sites, www.fmc.com, www.fmccrop.com, www.fmcprosolutions.com, www.fmclithium.com, and www.fmcbiopolymer.com.

9.     On the interactive website www.fmccrop.com, a consumer can search by state for products certified for use within his or her particular state.  Relevant for this action, when a user from the Southern District of Illinois enters the state of Illinois into a drop down menu on the www.fmccrop.com, the user can determine all products certified for use within the state of Illinois.

10.    This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this District or because the Defendant is currently subject to personal jurisdiction in this District.

12.    Defendant makes, sells, or has made and sold, a variety of products for sale to distributors, retailers, and the general consuming public. Such products include, but are not limited to, the products sold under the following trademarks and product names: Cynoff EC, Cynoff WP, Dragnet SFR, Prevail FT, Pounce 1.5G, Pounce 25WG, BaseLine Pretreat Termiticide, BaseLine Insecticide, Onyx, OnyxPro, Talstar EZ Granular Insecticide, Talstar EZ Granular Insecticide featuring Verge Granule Technology, Talstar N Granular Insecticide, Talstar Nursery Granular Insecticide, Talstar P Professional Insecticide, Talstar PL Granular Insecticide, Talstar S Select Insecticide, Talstar S Select Insecticide, Talstar Xtra Granular Insecticide, Authority XL, Dismiss CA, Dismiss South, Dismiss Turf, Echelon 4SC, Spartan 4F, Spartan FL RF, Authority First DF, FirstLine GT Plus Termite Bait Station, Methyllithium, QuickSilver T&O, Aim EC, Aim EW, Rage D-Tech, Shark EW, Shark H2O, Solitaire, Authority Assist, and Authority MTZ DF.

13.    Defendant marks the labels, product inserts, and/or packaging of each of the products recited in Paragraph 12 with at least one expired patent number or refers to these products on its Web sites as having current and/or previous labels with at least one expired patent number.

14.     Further, certain products and/or labels, product inserts, and/or packaging of the products recited in Paragraph 12 were created and/or copyrighted after the patents expired, and yet were still marked with expired patent numbers.

15.     For example, upon information and belief, the label for Dragnet SFR was last revised and/or reviewed on March 17, 2010.  Ex. 1.

16.     The label, insert and/or packaging of Dragnet SFR is marked with U.S. Patent No. 4,024,163 ("the '163 patent").  Ex. 1.

17.     The '163 patent, however, expired at the latest in May of 1992.

18.     Therefore, Defendant marked product labels over sixteen years after the '163 patent expired, with the '163 patent with intent to deceive the public and its competitors into believing this product was protected by a patent when in fact it was not.

19.     Additionally, Defendant marks the labels, product inserts, and/or packaging of three of the products recited in Paragraph 13 as being covered by a U.S. Patent, yet provides vague and nondescript patent numbers.

20.     For example, the label, insert and/or packaging of Solitaire Herbicide and Authority Assist Herbicide are each marked with the text "U.S. Patent No. XXXXXXXXXX." Exs. 2 and 3.

21.     Additionally, the label, insert and/or packaging of Authority MTZ DF Herbicide are marked with the text "U.S. Patent No. XXX XXXX."  Ex. 4.

22.     Therefore, Defendant marked product labels with simulated patent numbers with intent to deceive the public and its competitors into believing this product was protected by a patent when, upon information and belief, they are not.

4

23.     In a January 2011 press release, FMC Corporation announced a new partnership with Monsanto involving FMC Corporation's Authority herbicide brand

> Authority brands are now a part of Monsanto's Roundup Ready PLUS™ weed management platform, under the Residual Rewards$^{SM}$ program and incentives.

Ex. 5.

24.     The press release also specifies that the Authority herbicide brand includes the Authority First DF, Authority Assist, Authority MTZ DF, and "the newly labeled Authority XL herbicides:"

> As part of Residual Rewards, growers who utilize any of the FMC line of residual products, including Authority® First DF, Authority® Assist, Authority® MTZ DF or the newly labeled Authority® XL herbicides with Roundup PowerMAX® herbicide will receive a $1.00/A rebate.

Ex. 5.

25.     Therefore, upon information and belief, and based on FMC Corporation's press release, the label, insert and/or packaging of Authority herbicides, including but not limited to Authority First DF, Authority Assist, Authority MTZ DF, and all Authority XL herbicides, all at issue in this suit, were recently reviewed and/or revised, *i.e.* "newly labeled," in conjunction with FMC Corporation's partnership with Monsanto involving the Authority herbicide brand.

26.     At a minimum, Defendant reviewed and/or revised Authority First DF and Authority XL labels on July 23, 2010 and September 19, 2010, respectively.  Exs. 6 and 7.

27.     The label, insert and/or packaging of Authority First DF is marked with U.S. Patent Nos. 4,818,275 ("the '275 patent") and 5,163,995 ("the '995 patent").  Ex. 6.

28.     The label, insert and/or packaging of Authority XL Herbicide is marked with U.S. Patent Nos. 4,394,506 ("the '506 patent"), 4,547,215 ("the '215 patent"), and the '275 patent. See, Ex. 7.

5

29.     The '275 patent, however expired at the latest in April of 2006.

30.     The '995 patent, however expired at the latest in November of 2009.

31.     The '506 patent, however, expired at the latest in July of 2000.

32.     The '215 patent, however, expired at the latest in March of 2003.

33.     Therefore, Defendant marked product labels with expired patent numbers after creating business partnerships necessitating review and revisions of the product labels. Defendant did so with intent to deceive the public and its competitors into believing this product was protected by a patent when in fact it was not.

34.     Defendant is a sophisticated business entity with extensive experience in the procurement, acquisition, and litigation of patents in the United States.

35.     Because of the nature of its business, Defendant actively seeks and maintains a number of patents.

36.     Defendant claims to own, or have licenses under, a substantial number of patents and patent applications.

37.     Upon information and belief, Defendant has an in-house legal department which is responsible for Defendant's intellectual property and ensuring compliance with marketing, labeling, and advertising laws.

38.     As a sophisticated business entity, Defendant knows or reasonably should have known of the requirements and provisions of 35 U.S.C. § 292.  This is supported by the following facts.

39.     As the plaintiff in a copyright infringement action in which FMC Corporation alleged that a generic manufacturer copied certain of its labels, FMC Corporation gained knowledge of 35 U.S.C. § 292 regarding false patent marking when the Defendant to the action

6

alleged false marking as a counterclaim.  *See FMC Corp. v. Control Solutions, Inc*., 369 F. Supp. 2d 539, 583 (E.D. Pa. 2005).  Despite having direct knowledge from this action in 2005 that placing expired patent numbers on products deceives the public and competitors into believing such products are protected by a patent, FMC nonetheless created new products and labels with expired patent numbers, and continued to mark other products with expired patent numbers.

40.     FMC Corporation has made the representation in its 2009 Annual Report that its U.S. patents "are cumulatively important to our business:"

> We own a number of U.S. and foreign patents, trademarks and licenses that are cumulatively important to our business. We do not believe that the loss of any one or group of related patents, trademarks or licenses would have a material adverse effect on the overall business of FMC. The duration of our patents depends on their respective jurisdictions. Their expiration dates range through 2029.

Ex. 8 at 16.

41.     By stating that "[t]heir expiration dates range through 2029," Defendant acknowledges that it calculates and has knowledge of the duration of its patents and the expiration dates of its patents.  See Ex. 8 at 16.  Despite this knowledge, Defendant marks its products and labels with expired patent numbers.

42.     Defendant also recognizes that a number of its products are "off-patent," yet still describes them as "proprietary:"

> Agricultural Products provides a wide range of proprietary, branded products— based on both patented and off-patent technologies—for global crop protection, professional pest control, and lawn and garden markets. Product branding is a prevalent industry practice used to help maintain and grow market share by promoting end-user recognition and product and supplier reputation. Agricultural Products enjoys relatively strong niche positions in crop and non-crop market segments in the Americas, Europe and other parts of the world and derived approximately 79 percent of its revenue from outside North America in 2009.

Ex. 8 at 6.

7

43.    Thus, Defendant admits that it has incentive to and that it tries to keep its products "proprietary" for as long as possible.

44.    Defendant has also publicly recognized that when its patents lapse, others will be in a better position to compete against products formerly covered by these patents.  Defendant recognizes that when its patented products expire, it faces increased competition, particularly from its generic competitors:

> Competition from generic agrochemical producers has increased as a significant number of product patents held industry-wide have expired in the last decade.

> Competition—All of our segments face competition, which could affect our ability to maintain/raise prices, successfully enter certain markets or retain our market position. Additionally, in Agricultural Products, competition in genetically modified products (GMO) as well as generic producers has increased. Generics are driven by the number of significant product patents that have expired in the last decade.

Ex. at 8 at 16,18.

45.    Defendant has therefore admitted publicly that competition increases when its competitors become aware that Defendant's products are no longer protected by patents.

46.    Defendant has in the past knowingly marked or caused to be marked, and continues to mark or cause to be marked, articles with at least one expired patent with intent to deceive the public and its competitors into believing such products were protected by patents when in fact they were not.

47.    Each false marking on Defendant's products is likely to, or at least has the potential to, discourage or deter persons and companies from making or selling similar or competing products.

48.    By falsely marking its products with patents that have expired, Defendant has benefitted commercially and financially, and has limited competition against such products.

8

49.     Thus, by marking and continuing to mark articles with expired patent numbers without a reasonable belief that such articles were covered by the patents, Defendant has injured the sovereign interests of the United States as well as the public interest of at least Defendant's customers who purchased such products, and have discouraged competition and innovation in competing products.

## THE EXPIRED PATENTS

1.     The '163 patent, entitled, "INSECTICIDES," was filed on September 13, 1974 and issued May 17, 1977.  A true and correct copy of this patent is attached as Exhibit 9 to this complaint.

2.     The '163 patent expired no later than May 1994.

3.     U.S. Patent No. 4,238,505 ("the '505 patent"), entitled, "INSECTICIDAL BIPHENYLMENTHYL PERHALOALKYLVINYLCYCLO-PROPANECARBOXYLATES," was filed on June 25, 1979 and issued December 9, 1980. A true and correct copy of this patent is attached as Exhibit 10 to this complaint.

4.     The '505 patent expired no later than January 1998.

5.     The '506 patent, entitled, "AGRICULTURAL SULFONAMIDES," was filed on November 30, 1979 and issued July 19, 1983. A true and correct copy of this patent is attached as Exhibit 11 to this complaint.

6.     The '506 patent expired no later than July 2000.

7.     The '215 patent, entitled, "HERBICIDAL SULFONAMIDES," was filed on September 6, 1983 and issued October 15, 1985.  A true and correct copy of this patent is attached as Exhibit 12 to this complaint.

8.     The '215 patent expired no later than March 24, 2003.

9.    The '275 patent, entitled, "HERBICIDAL ARYL TRIAZOLINONES," was filed on December 31, 1986 and issued April 4, 1989. A true and correct copy of this patent is attached as Exhibit 13 to this complaint.

10.    The '275 patent expired no later than April 2006.

11.    U.S. Patent No. 4,921,696 ("the '696 patent"), entitled, "METHOD FOR THE CONTROL OF INSECTS," was filed on October 11, 1988 and issued May 1, 1990. A true and correct copy of this patent is attached as Exhibit 14 to this complaint.

12.    The '696 patent expired no later than May 2007.

13.    U.S. Patent No. 4,976,886 ("the '886 patent"), entitled, "PREPARATION OF ORGANOMETALLIC AND ORGANOBIMETALLIC COMPOUNDS," was filed on February 25, 1988 and issued December 11, 1990. A true and correct copy of this patent is attached as Exhibit 15 to this complaint.

14.    The '886 patent expired no later than December 2007.

15.    U.S. Patent No. 5,125,958 ("the '958 patent"), entitled, "HERBICIDAL TRIAZOLINONES," was filed on March 5, 1991 and issued June 30, 1992. A true and correct copy of this patent is attached as Exhibit 16 to this complaint.

16.    The '958 patent expired no later than June 2009.

17.    The '995 patent, "HERBICIDAL ALKOXY-1,2,4-TRIAZOLO[1,5-C] PYRIMIDINE-2-SULFONAMIDES," was filed on August 13, 1991 and issued November 17, 1992. A true and correct copy of this patent is attached as Exhibit 17 to this complaint.

18.    The '995 patent expired no later than November 2009.

## COUNT I

## FALSE PATENT MARKING OF PRODUCTS WITH THE '163 PATENT

19.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-18 of this Complaint.

20.     Defendant makes, sells, or has made and sold, a number of products which it marks or causes to be marked with the '163 patent.

21.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Cynoff EC Insecticide, Cynoff WP Insecticide, Dragnet SFR Termiticide Insecticide, Prevail FT Termiticide, Pounce 1.5G Insecticide and Pounce 25 WG Insecticide.

22.     Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibits 1 and 18-22 to this Complaint.

23.     The Cynoff EC Insecticide label is marked with the '163 patent and states that the label was revised and/or reviewed in 2005.  Upon information and belief, this label has been utilized on Defendant's products since at least 2005.  Ex. 18.

24.     The Cynoff WP Insecticide label is marked with the '163 patent and states that the label was revised and/or reviewed in 2005.  Upon information and belief, this label has been utilized on Defendant's products since at least 2005.  Ex. 19.

25.     The Dragnet SFR Termiticide Insecticide label is marked with the '163 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 1.

26.     The Prevail FT Termiticide label is marked with the '163 patent and states that the

11

label was revised and/or reviewed in 2003.  Upon information and belief, this label has been utilized on Defendant's products since at least 2003.  Ex. 20.

27.     The Pounce 1.5G Insecticide label is marked with the '163 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 21.

28.     The Pounce 25 WG Insecticide label is marked with the '163 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 22.

29.     The previous Pounce 25 WG Insecticide label (also verified from Defendant's Web site) states it was revised and/or reviewed in 2002, and is similarly marked with the '163 patent.  Ex. 23.  Upon information and belief, this label was utilized between the years 2002 and 2008.

30.     Although Defendant marked Cynoff EC Insecticide, Cynoff WP Insecticide, Dragnet SFR Termiticide Insecticide, Prevail FT Termiticide, Pounce 1.5G Insecticide and Pounce 25 WG Insecticide products with the '163 patent during these time frames, the '163 patent expired no later than May 1994.

31.     Cynoff EC Insecticide, Cynoff WP Insecticide, Dragnet SFR Termiticide Insecticide, Prevail FT Termiticide, Pounce 1.5G Insecticide and Pounce 25 WG Insecticide were thus marked with the '163 patent, despite the fact the '163 patent expired.

32.     Defendants were aware that the '163 patent was expired when they designed and/or utilized those labels.

33.     The instances of false marking shown in Exhibits 1 and 18-23 are representative and not exhaustive.

12

34.     Defendant knew that the articles it marked and continues to mark with the '163

patent are not covered by the expired patent marked on its products because expired patents have

no monopoly rights, yet it still intentionally marks the products with the hopes of preventing

others from making products that fall within the scope of the falsely marked patent(s) on its

labels.

## COUNT II

### FALSE PATENT MARKING OF PRODUCTS WITH THE '505 PATENT

35.     Relator realleges and incorporates herein by reference the allegations stated in

paragraphs 1-34 of this Complaint.

36.     Defendant makes, sells, or has made and has sold, a number of products which

it marks or causes to be marked with the '505 patent.

37.     Such products include, but are not limited to, those sold under the product names,

Trade names and/or trademark BaseLine (Pretreat Termiticide), BaseLine (Insecticide), Onyx

Insecticide, OnyxPro Insecticide, Talstar EZ Granular Insecticide, Talstar EZ Granular

Insecticide featuring Verge Granule Technology, Talstar N Granular Insecticide, Talstar Nursery

Granular Insecticide, Talstar P Professional Insecticide, Talstar PL Granular Insecticide, Talstar

S Select Insecticide, Talstar Select Insecticide Supplemental, and Talstar Xtra Granular

Insecticide.

38.     Images of the current labels of these products (as verified through Defendant's

Web site) are attached hereto as Exhibits 24-51 to this Complaint.

39.     The BaseLine (Pretreat Termiticide) label is marked with the '505 patent and

states that the label was revised and/or reviewed in January 2009. Upon information and belief,

this label has been utilized on Defendant's products since at least 2009. Ex. 24.

13

40.     The BaseLine Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 25.

41.     The Onyx Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2008. Upon information and belief, this label has been utilized on Defendant's products since at least 2008. Ex. 26.

42.     The OnyxPro Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2008. Upon information and belief, this label has been utilized on Defendant's products since at least 2008. Ex. 27.

43.     The Talstar EZ Granular Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 28.

44.     The Talstar EZ Granular Insecticide featuring Verge Granule Technology label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2010. Upon information and belief, this label has been utilized on Defendant's products since at least 2010. Ex. 29.

45.     The Talstar N Granular Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2010. Upon information and belief, this label has been utilized on Defendant's products since at least 2010. Ex. 30.

46.     The Talstar Nursery Granular Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in 2003. Upon information and belief, this label has been utilized on Defendant's products since at least. Ex. 31.

47.     The Talstar P Professional Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in February 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 32.

48.     The previous Talstar P Professional Insecticide label (also verified from Defendant's Web site) states it was revised and/or reviewed in 2007, and is similarly marked with the '505 patent.  Ex. 33.  Upon information and belief, this label was utilized between the years 2007 and 2009.

49.     The Talstar PL Granular Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in January 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 34.

50.     The Talstar PL Granular Insecticide Supplemental label is marked with the '505 patent and states that the label was revised and/or reviewed in 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 35.

51.     The Talstar S Select Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in 2006. Upon information and belief, this label has been utilized on Defendant's products since at least 2006. Ex. 36.

52.     The Talstar S Select Insecticide Supplemental label is marked with the '505 patent and states that the label was revised and/or reviewed in 2010. Upon information and belief, this label has been utilized on Defendant's products since at least 2010. Ex. 37.

53.     The Talstar Xtra Granular Insecticide label is marked with the '505 patent and states that the label was revised and/or reviewed in 2010. Upon information and belief, this label has been utilized on Defendant's products since at least 2010. Ex. 38.

54.     Although Defendant marked BaseLine (Pretreat Termiticide), BaseLine (Insecticide), Onyx Insecticide, OnyxPro Insecticide, Talstar EZ Granular Insecticide, Talstar EZ Granular Insecticide featuring Verge Granule Technology, Talstar N Granular Insecticide, Talstar Nursery Granular Insecticide, Talstar P Professional Insecticide, Talstar PL Granular Insecticide, Talstar S Select Insecticide, Talstar Select Insecticide Supplemental, and Talstar Xtra Granular Insecticide products with the '505 patent during these time frames, the '505 patent expired no later than January 1998.

55.     BaseLine (Pretreat Termiticide), BaseLine (Insecticide), Onyx Insecticide, OnyxPro Insecticide, Talstar EZ Granular Insecticide, Talstar EZ Granular Insecticide featuring Verge Granule Technology, Talstar N Granular Insecticide, Talstar Nursery Granular Insecticide, Talstar P Professional Insecticide, Talstar PL Granular Insecticide, Talstar S Select Insecticide, Talstar Select Insecticide Supplemental, and Talstar Xtra Granular Insecticide products were thus marked with the '505 patent, despite the fact the '505 patent expired.

56.     Defendants were aware that the '505 patent was expired when they designed and/or utilized those labels.

57.     The instances of false marking shown in Exhibits 25-38 are representative and not exhaustive.

58.     Defendant knew that the articles it marked and continues to mark with the '505 patent are not covered by the expired patent marked on its products because expired patents have no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

## COUNT III

## FALSE PATENT MARKING OF PRODUCTS WITH THE '506 PATENT

59.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-58 of this Complaint.

60.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '506 patent.

61.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Authority XL Herbicide.

62.     Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 7 to this Complaint.

63.     The Authority XL Herbicide label is marked with the '506 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 7.

64.     Although Defendant marked Authority XL Herbicide products with the '506 patent during these time frames, the '506 patent expired no later than July 2000.

65.     Authority XL Herbicide was thus marked with the '506 patent, despite the fact the '506 patent expired.

66.     Defendants were aware that the '506 patent was expired when they designed and/or utilized those labels.

67.     The instances of false marking shown in Exhibit 7 are representative and not exhaustive.

68.     Defendant knew that the articles it marked and continues to mark with the '506 patent are not covered by the expired patent marked on its products because expired patents have

no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

## COUNT IV

### FALSE PATENT MARKING OF PRODUCTS WITH THE '215 PATENT

69.     Relator realleges and incorporates herein by reference the allegations stated in Paragraphs 1-68 of this Complaint.

70.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '215 patent.

71.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Authority XL Herbicide.

72.     Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 7 to this Complaint.

73.     The Authority XL Herbicide label is marked with the '215 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 7.

74.     Although Defendant marked Authority XL Herbicide products with the '215 patent during these time frames, the '215 patent expired no later than March 2003.

75.     Authority XL Herbicide was thus marked with the '215 patent, despite the fact the '215 patent expired.

76.     Defendants were aware that the '215 patent was expired when they designed and/or utilized those labels.

77.      The instances of false marking shown in Exhibits 7 are representative and not

exhaustive.

78.     Defendant knew that the articles it marked and continues to mark with the '215

patent are not covered by the expired patent marked on its products because expired patents have

no monopoly rights, yet it still intentionally marks the products with the hopes of preventing

others from making products that fall within the scope of the falsely marked patent(s) on its

labels.

<u>**COUNT V**</u>

<u>**FALSE PATENT MARKING OF PRODUCTS WITH THE '275 PATENT**</u>

79.     Relator realleges and incorporates herein by reference the allegations stated in

paragraphs 1-78 of this Complaint.

80.     Defendant makes, sells, or has made and has sold, a number of products which

it marks or causes to be marked with the '275 patent.

81.     Such products include, but are not limited to, those sold under the product names,

trade names and/or trademark Dismiss CA Herbicide, Dismiss South Herbicide, Dismiss Turf

Herbicide, Echelon 4SC Herbicide, Spartan 4F Herbicide, Spartan FL 4F Herbicide, Authority

DF First Herbicide, and Authority XL Herbicide.

82.     Images of the current labels of these products (as verified through Defendant's

Web site) are attached hereto as Exhibits 6-7 and 39-47 to this Complaint.

83.     The Dismiss CA Herbicide label is marked with the '275 patent and states that

the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been

utilized on Defendant's products since at least 2010.  Ex. 39.

84.     The Dismiss South Herbicide label is marked with the '275 patent and states that

the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 40.

85.     The Dismiss Turf Herbicide label is marked with the '275 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 41.

86.     The Echelon 4SC Herbicide label is marked with the '275 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 42.

87.     The Echelon 4SC Herbicide Supplemental label is marked with the '275 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 43.

88.     The Spartan 4F Herbicide label is marked with the '275 patent and states tha the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 44.

89.     The Spartan 4F Herbicide Supplemental label is marked with the '275 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 45.

90.     The Spartan FL 4F Herbicide label is marked with the '275 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 46.

91.     The Spartan FL 4F Herbicide Supplemental label is marked with the '275 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 47.

92.     The Authority First DF Herbicide label is marked with the '275 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 6.

93.     The Authority XL Herbicide label is marked with the '275 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 7.

94.     Although Defendant marked Dismiss CA Herbicide, Dismiss South Herbicide, Dismiss Turf Herbicide, Echelon 4SC Herbicide, Spartan 4F Herbicide, Spartan FL 4F Herbicide, Authority DF First Herbicide, and Authority XL Herbicide products with the '275 patent during these time frames, the '275 patent expired no later than April 2006.

95.     Dismiss CA Herbicide, Dismiss South Herbicide, Dismiss Turf Herbicide,

96.     Echelon 4SC Herbicide, Spartan 4F Herbicide, Spartan FL 4F Herbicide, Authority DF First Herbicide, and Authority XL Herbicide was thus marked with the '275 patent, despite the fact the '275 patent expired.

97.     Defendants were aware that the '275 patent was expired when they designed and/or utilized those labels.

98.     The instances of false marking shown in Exhibits 6-7 and 39-47 are representative and not exhaustive.

99.     Defendant knew that the articles it marked and continues to mark with the '275 patent are not covered by the expired patent marked on its products because expired patents have no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

21

## COUNT VI

## FALSE PATENT MARKING OF PRODUCTS WITH THE '696 PATENT

100.    Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-99 of this Complaint.

101.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '696 patent.

102.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Firstline GT Plus Termite Bait Station.

103.    Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 48 to this Complaint.

104.    The Firstline GT Plus Termite Bait Station label is marked with the '696 patent and states that the label was revised and/or reviewed in 2004.  Upon information and belief, this label has been utilized on Defendant's products since at least 2004.  Ex. 48.

105.    Although Defendant marked Firstline GT Plus Termite Bait Station products with the '696 patent during these time frames, the '696 patent expired no later than May 2007.

106.    Firstline GT Plus Termite Bait Station was thus marked with the '696 patent, despite the fact the '696 patent expired.

107.    Defendants were aware that the '696 patent was expired when they designed and/or utilized those labels.

108.    The instances of false marking shown in Exhibit 64 are representative and not exhaustive.

109.    Defendant knew that the articles it marked and continues to mark with the '696

22

patent are not covered by the expired patent marked on its products because expired patents have

no monopoly rights, yet it still intentionally marks the products with the hopes of preventing

others from making products that fall within the scope of the falsely marked patent(s) on its

labels.

**COUNT VII**

**FALSE PATENT MARKING OF PRODUCTS WITH THE '886 PATENT**

110.    Relator realleges and incorporates herein by reference the allegations stated in

paragraphs 1-109 of this Complaint.

111.    Defendant makes, sells, or has made and has sold, a number of products which

it marks or causes to be marked with the '886 patent.

112.    Such products include, but are not limited to, those sold under the product names,

trade names and/or trademark Methyllithium.

113.    Images of the current labels of these products (as verified through Defendant's

Web site) are attached hereto as Exhibits 49 to this Complaint.

114.    The Methyllithium label is currently marked with the '886 patent.  Ex. 49.

115.    Although Defendant marked Methyllithium products with the '886 patent, the

'886 patent expired no later than December 2007.

116.    Methyllithium was thus marked with the '886 patent, despite the fact the '886

patent expired.

117.    Defendants were aware that the '886 patent was expired when they designed

and/or utilized those labels.

118.    The instances of false marking shown in Exhibit 49 are representative and not

exhaustive.

119.     Defendant knew that the articles it marked and continues to mark with the '886 patent are not covered by the expired patent marked on its products because expired patents have no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

## COUNT VIII

## FALSE PATENT MARKING OF PRODUCTS WITH THE '958 PATENT

120.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-119 of this Complaint.

121.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '958 patent.

122.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademark QuickSilver T&O Herbicide, Aim EC Herbicide, Aim EW Herbicide, Rage D-Tech Herbicide, Shark EW Herbicide and Shark H2O Herbicide.

123.     Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibits 50-58 to this Complaint.

124.     The QuickSilver T&O Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009.  Ex. 50.

125.     The QuickSilver T&O Herbicide Supplemental label is marked with the '958 patent and states that the label was revised and/or reviewed in 2006.  Upon information and belief, this label has been utilized on Defendant's products since at least 2006.  Ex. 51.

24

126.    The Aim EC Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 52.

127.    The previous Aim EC Herbicide label ( also verified from Defendant's Web site) states it was revised and/or reviewed in 2005, and is similarly marked with the '958 patent.  Ex. 53. Upon information and belief, this label was utilized between the years 2005 and 2008.

128.    The Aim EW Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2005.  Upon information and belief, this label has been utilized on Defendant's products since at least 2005.  Ex. 54.

129.    Aim EW Herbicide (for Minnesota wild rice) label is marked with the '958 patent and states that the label was revised and/or reviewed in 2003.  Upon information and belief, this label has been utilized on Defendant's products since at least 2003.  Ex. 55.

130.    The Rage D-Tech Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 56.

131.    The Shark EW Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2008.  Upon information and belief, this label has been utilized on Defendant's products since at least 2008.  Ex. 57.

132.    The Shark H2O Herbicide label is marked with the '958 patent and states that the label was revised and/or reviewed in 2005.  Upon information and belief, this label has been utilized on Defendant's products since at least 2005.  Ex. 58.

133.    Although Defendant marked QuickSilver T&O Herbicide, Aim EC Herbicide,

25

Aim EW Herbicide, Rage D-Tech Herbicide, Shark EW Herbicide and Shark H2O Herbicide products with the '958 patent during these time frames, the '958 patent expired no later than June 2009.

134.     QuickSilver T&O Herbicide, Aim EC Herbicide, Aim EW Herbicide, Rage D-Tech Herbicide, Shark EW Herbicide and Shark H2O Herbicide were thus marked with the '958 patent, despite the fact the '958 patent expired.

135.     Defendants were aware that the '958 patent was expired when they designed and/or utilized those labels.

136.     The instances of false marking shown in Exhibits 50-58 are representative and not exhaustive.

137.     Defendant knew that the articles it marked and continues to mark with the '958 patent are not covered by the expired patent marked on its products because expired patents have no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

## COUNT IX

### FALSE PATENT MARKING OF PRODUCTS WITH THE '995 PATENT

138.     Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-137 of this Complaint.

139.     Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with the '995 patent.

140.     Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Authority First DF Herbicide.

141.   Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibit 6 to this Complaint.

142.   The Authority First DF Herbicide label is marked with the '995 patent and states that the label was revised and/or reviewed in 2010.  Upon information and belief, this label has been utilized on Defendant's products since at least 2010.  Ex. 6.

143.   Although Defendant marked Authority First DF Herbicide products with the '995 patent during these time frames, the '995 patent expired no later than November 2009.

144.   Authority First DF Herbicide was thus marked with the '995 patent, despite the fact the '995 patent expired.

145.   Defendants were aware that the '995 patent was expired when they designed and/or utilized those labels.

146.   The instances of false marking shown in Exhibit 6 are representative and not exhaustive.

147.   Defendant knew that the articles it marked and continues to mark with the '995 patent are not covered by the expired patent marked on its products because expired patents have no monopoly rights, yet it still intentionally marks the products with the hopes of preventing others from making products that fall within the scope of the falsely marked patent(s) on its labels.

## COUNT X

## FALSE PATENT MARKING OF PRODUCTS WITH THE TERM "PATENTED"

148.   Relator realleges and incorporates herein by reference the allegations stated in paragraphs 1-147 of this Complaint.

27

149.    Defendant makes, sells, or has made and has sold, a number of products which it marks or causes to be marked with language representing that a product is patented.

150.    Such products include, but are not limited to, those sold under the product names, trade names and/or trademark Solitaire Herbicide, Authority Assist Herbicide, and Authority MTZ DF Herbicide.

151.    Images of the current labels of these products (as verified through Defendant's Web site) are attached hereto as Exhibits 2-4 to this Complaint.

152.    The Solitaire Herbicide label is marked with the language "U.S. Patent No. XXXXXXXXXX" and states that the label was revised and/or reviewed in 2010. Upon information and belief, this label has been utilized on Defendant's products since at least 2010. Ex. 2.

153.    The Authority Assist Herbicide label is marked with the language "U.S. Patent No. XXXXXXX" and states that the label was revised and/or reviewed in 2009.  Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 3.

154.    The Authority MTZ DF Herbicide label is marked with the language "U.S. Patent No. XXX XXXX" and states that the label was revised and/or reviewed in 2009. Upon information and belief, this label has been utilized on Defendant's products since at least 2009. Ex. 4.

155.    Although Defendant marked its Solitaire Herbicide, Authority Assist Herbicide, and Authority MTZ DF Herbicide products with the language "U.S. Patent No. XXXXXXXXXX" or "U.S. Patent No. XXX XXXX" during these time frames, Defendant

provided no further resources to the public, its consumers, or its competitors regarding the specifics of its purported patent protection. Exs. 2-4.

156.    Upon information and belief, Defendant falsely marked its products with the the language "U.S. Patent No. XXXXXXXXXX" or "U.S. Patent No. XXX XXXX" when, in fact, its products were not.

157.    Defendant knew that the articles it marked and continues to mark with the language "U.S. Patent No. XXXXXXXXXX" or "U.S. Patent No. XXX XXXX" are not covered by a pending patent or patent application, yet it still intentionally mark the products with the hope of preventing others from making similar products.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays that this Court enter judgment in their favor and against Defendant as follows:

A. Entering an injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from further violating 35 U.S.C. § 292.

B. Order Defendant to pay a civil monetary fine of $500 per false marking offense, or an alternative amount as determined by the Court, one-half of which shall be paid to the United States;

C. Order Defendant to provide an accounting for any falsely marked products not presented at trial and a monetary award set by the Court for such falsely marked articles;

D. Order Defendant to pay all costs of this action, including attorneys' fees and all available interest; and

E. Grant Relator any such other and further relief as the Court may deem just and equitable.

Respectfully submitted,
PLAINTIFF CLOVERLEAF GOLF COURSE, INC.

By its attorneys,
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD

Dated:  March 11, 2011            By: */s/ Paul A. Lesko*_____
Paul A. Lesko – IL Bar No. 6288806
Jo Anna Pollock – IL Bar No. 6273491
One Court Street
Alton, Illinois 62002
(618) 259-2222
(618) 259-2251 – *facsimile*
plesko@simmonsfirm.com